HANOVER CANNING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29860. Filed September 21, 1956.

*Thomas R. Wickersham, Esq.*, for the petitioner.
*Jules I. Whitman, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* The respondent, by his determination, has conceded that the petitioner is qualified for section 722 relief within the meaning of section 722 (b) (4) of the Internal Revenue Code of 1939, and the only remaining question is as to a fair and just amount representing normal earnings to be used as petitioner's constructive average base period net income.

In its applications for relief and its petition herein, it was the claim of the petitioner that $58,509.46 was such fair and just amount. Its claim now is that if the changes made in the base period and the changes to which it was committed at the end of 1939 had been made 2 years before they were, it would have packed and sold in 1939, 500,000 cases of the No. 2 size can of the various vegetables it was then packing, and on the basis of such production the fair and just amount to be used as its constructive average base period net income would have been $32,696. It caused its accountant to prepare, and it has placed in evidence, schedules to show computation thereof.

In making his computation, the accountant prorated the assumed 500,000 cases among the vegetables being packed in 1939 according to the average of the actual pack of the various items for the years 1935 through 1939, and, assuming the sale of the entire 500,000 cases in 1939, he applied sales and cost factors purportedly reflecting petitioner's actual experienced rates of sales and costs for 1939, to arrive at gross sales, cost of sales, and gross profit, and with some modifications, as indicated in footnotes to the computation, deducted petitioner's purported "Administrative and Other Expenses" for 1939, to arrive at constructive net income.

While the computation appears to be mathematically accurate, it is of little or no value for the purposes here, because of lack of proof of the basic facts from which the various factors were derived. The parties have stipulated in dollars the aggregate of petitioner's sales, cost of sales, and the resulting gross profit for each of the years 1925 through 1939, but there is no proof of the prices at which the various vegetables were sold in 1939, nor of the quantities sold. Similarly, we are advised as to the opening and closing inventories of goods on hand in dollar amounts, but we have no information as to such inventories in terms of cases of vegetables and no breakdown thereof between the various varieties. We do know the actual annual pack of vegetables in cases and by varieties, but we also know that the annual pack in cases did not represent the annual sales in cases. It is not possible therefore to arrive at proper sales factors by prorating the 1939 dollar sales to the 1939 pack by cases and varieties. On brief, petitioner states that the sales prices per dozen cans as used in the computation were taken from and reflected amounts shown on its 1939 sales invoices. The assertion, if true, is not supported by any proof. There is no indication that the invoices were in court at the time of the trial, and we are not advised of the effort, if any, on the part of the petitioner to stipulate such facts from the invoices, pursuant to Rule 31 (b) of the Court's Rules of Practice.

The state of the record, to some extent, is much the same with respect to the cost factors used by the accountant in his computation. Here again, there is no indication that petitioner attempted to stipulate its basic facts, pursuant to Rule 31 (b) above. A schedule purporting to show the actual cost per dozen No. 2 size cans of petitioner's actual pack for 1939 was prepared and placed in evidence. Some of the basic cost figures used in the preparation of the schedule were taken from petitioner's books, which books were in the courtroom and available for check by respondent's counsel, but as in the case of sales, some of the records from which such figures were taken were not available for check. Aside, however, from any question as to the correctness of the basic facts from which the allocations and computations were made, the responses of the accountant, on cross-examination, cast substantial doubt upon some of the assumptions made and steps taken in arriving at the ultimate figures.

In addition to our difficulties with the sales and cost factors applied by the accountant in his computation, the proof does not, in our opinion, support the conclusion or assumption that petitioner would have packed 500,000 cases of vegetables in 1939, if the changes made and to which it was committed by the end of the base period had been consummated 2 years before they were. The assumed pack of 500,000 cases represented the expressed opinion of Alan Warehime in the

course of his testimony, and in support thereof, petitioner relies on copies of letters mailed by it to potential customers during the base period, advising that it could not supply various quantities of goods in respect of which inquiries had been made. It also relies on the testimony of several brokers and distributors to the effect that they would have purchased substantially greater quantities of various items from petitioner if they had been available. Granting the fact that petitioner did actually receive orders it could not fill and that the brokers and distributors would have purchased more of certain items if they had been available, we are still unable to find justification for an assumed pack in 1939 of 500,000 cases of vegetables, based on the changes made and to be made.

In the first place, there is no showing that petitioner was limited in the base period to its actual production by the capacity of its plant, even prior to the changes in question, and except possibly for "vacuum pack" tomatoes and peas, due to the short pea crop in that year, that it could not have packed in 1939 the quantity of vegetables for which it now contends. According to representations which it made to respondent in support of its applications for relief, it would definitely appear from a comparison of petitioner's production by weeks that there could have been comparatively few weeks during any canning season in the base period in which it operated at or near capacity. There was an assertion by at least one witness that petitioner did operate to capacity during the fresh vegetable season, but when pressed as to what the actual capacity of the plant was, one answer was that petitioner in the base period years packed all of the peas, beans, and tomatoes which were available to it. This only meant, of course, that with due allowance for variations in the weather and other factors affecting the growth of the various vegetables, petitioner had available to it and packed in each of the years all of the vegetables it had contracted for or, by its own prearranged plan, produced on its farms. Presumably petitioner did in 1938 and 1939 increase the acreage of the vegetables grown for it under contracts and possibly on its own farms, since it did make noticeable increases in its purchases of seeds in those years, and admittedly, adverse growing conditions did result in a short pea crop in 1939, but so far as appears, the bean and tomato crops were in keeping with plans and expectations under the contracts which had been made. Whatever reasons petitioner may have had for not contracting for a more ample supply of vegetables, we are not advised, but we are satisfied on the record that it was not because the capacity of its plant was so limited that it could not pack substantially more than it did. As for kidney beans, which were packed in the off-season, it is quite obvious that petitioner could have increased its pack very substantially at any time during the base period

that it chose to do so. It is a fact, and we have so found, that the changes made did substantially increase the capacity of petitioner's plant, but on the record as a whole we are satisfied that petitioner's failure to pack substantially more vegetables during the base period was due to reasons other than lack of capacity, which are not disclosed.

That is not to say, however, that petitioner's production in 1939 would not have been considerably higher than it actually was, if the changes herein had been made 2 years before they were, and that, as a consequence, the fair and just amount to be used as petitioner's constructive average base period net income would not be greater than the respondent has determined. Since some of the changes were not consummated until after December 31, 1939, we are privileged, under section 722 (a),[4] to consider post-1939 events to the extent necessary to establish the amount to be used as petitioner's constructive average base period net income, and we find these events as they appear of record both revealing and helpful. In 1940 petitioner's output was 383,629 cases, as compared with 371,879 for 1939. By the beginning of the 1941 packing season, most, if not all, of the changes had been made, and petitioner's pack for that year was 429,855 cases. In 1942 the pack was 506,924, and at first blush might appear to be corroborative of the 500,000 cases upon which petitioner based its computation. Of that amount, however, 50,309 cases were pork and beans, a commodity petitioner had never packed before 1941, and could have been the result of the war demand. At any rate, there is no indication of record that the production of pork and beans was geared to or in any way resulted from the changes herein, and there being no evidence to the contrary, it is also within reason to conclude that pressure for added food production in the prosecution of the war may have accounted, to some extent, for the increases in the pack of other items. Though satisfied that a considerable increase in petitioner's production did result from the said changes, we find no justification for an assummed pack for 1939 much, if any, greater than the actual pack for 1941.

Aside from the increase in production, there are other factors shown of record which, to some degree, support a greater constructive average base period net income than that determined by respondent. To illustrate, the new graders for both peas and beans were faster in

---

[4] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—* * * In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

operation and the grading between the top and secondary qualities was more effectively done, thereby improving petitioner's best grades of peas and beans. Similarly, new equipment for washing and scalding tomatoes permitted more effective operation in preparing tomatoes for packing. The packing of tomatoes by the vacuum pack method, which began in 1939, resulted in a quality product and a demand therefor which petitioner was unable to meet for some indefinite time to come, although it is to be noted that there is an absence of proof as to the comparative costs of packing tomatoes by the prior method and by vacuum pack and there is no way of knowing whether the margin of profit was relatively great or small. Neither do we have any showing as to the effect on profits of the change from canning of the lower grade tomatoes to the processing thereof as puree. As another factor resulting in increased profits, petitioner stresses the change in its methods of marketing its products, but there again, there is no proof from which we might determine the extent of such increase, even if we accept as true the assertion that increased profits did result. On the whole, however, we are satisfied that these and other changes did tend to increase the earning level of petitioner's business, and that the respondent did not make due allowance for those increases in his determination of constructive average base period net income.

Another fact which in our opinion is of significance is that if the cost of goods sold by petitioner during the years 1935 through 1939 and for the fiscal years ended May 31, 1941 through 1943, be related to the sales for the said years, it will be noted that the costs in the years as and after the changes were made were noticeably lower, indicating that the changes produced a much more favorable margin of profit.

As noted, it is not possible, due to the state of the record, to determine with any definiteness what petitioner's 1939 production would have been if the changes herein had been effected 2 years before they were, and even if we could make such a determination, we would be left to conjecture as to the costs and sales factors to be applied to the quantities of the various varieties of vegetables making up such pack to arrive, by computation, at the constructive profit thereon. Based, however, on the evidence which we do have, it is our conclusion, and we have found as a fact, that a fair and just amount representing normal earnings to be used as petitioner's constructive average base period net income is $18,000.

Reviewed by the Special Division.

*Decision will be entered under Rule 50*